UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SCOTT LEROY WILSON,<br><br>　　　　　Petitioner,<br><br>　vs.<br><br>CHIEF WARDEN ROBERT DOOLEY; AND<br>THE ATTORNEY GENERAL OF THE<br>STATE OF SOUTH DAKOTA,<br><br>　　　　　Respondents. | 4:17-CV-04057-KES<br><br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on petitioner Scott Leroy Wilson's *pro se*

petition for habeas relief pursuant to 28 U.S.C. § 2254. See Docket No. 1. This

matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A)

and (B) and the October 16, 2014, standing order of the Honorable Karen E.

Schreier, United States District Judge. Pending is respondents' motion to dismiss

Mr. Wilson's petition as untimely. See Docket No. 8.

**FACTS**

**A.　Direct Criminal Proceedings**

Mr. Wilson was initially charged by a criminal complaint on June 30, 2010,

with five counts: (1) aggravated assault against a law enforcement officer;

(2) aggravated eluding of a law enforcement officer, (3) hit and run, (4) speeding,

and (5) stop light violation. On August 16, 2010, Mr. Wilson was charged in a

separate criminal file with one count of simple assault and two counts of sexual contact without consent for events that had occurred in the Yankton County jail on August 4, 2010, while Mr. Wilson was incarcerated there.

On September 21, 2010, Mr. Wilson entered a plea of guilty to the aggravated assault charge. All remaining charges in both criminal cases were then dismissed. Mr. Wilson was sentenced to a term of 10 years' imprisonment, with 5 years suspended on December 7, 2010. Mr. Wilson did not file a direct appeal.

## B.    First State Habeas Petition

On April 22, 2014, Mr. Wilson filed a habeas petition in state court. In ground one of that petition, he stated his mandatory parole date was March 10, 2014, but that he had not been paroled because he refused to take STOP classes. The court infers that STOP classes are for prisoners who are sex offenders. Mr. Wilson stated the South Dakota Department of Corrections ("DOC") classified him as a "non-convicted sex offender" because of an incident which occurred in county jail in 2010 for which he was never convicted. Mr. Wilson alleged it was not right or fair to punish someone for something they had never been convicted of.

Thereafter, habeas counsel was appointed to represent Mr. Wilson. Counsel filed an amended habeas petition in which ground one was realleged. Counsel asserted that requiring Mr. Wilson to participate in STOP classes would require him to admit to sexual offenses he had never been convicted of, in violation of his Fifth Amendment right against self-incrimination; his Sixth Amendment right to counsel, compulsory process, and confrontation; and his Fourteenth Amendment due process right to life, liberty and property.

On September 18, 2014, Mr. Wilson filed a motion to correct an illegal sentence. He alleged the prosecutor promised in the plea agreement to a cap on Mr. Wilson's sentence of no more than 5 years. Since Mr. Wilson was in fact sentenced to 10 years' imprisonment, he claimed his sentence was illegal. This motion appears to have been combined with Mr. Wilson's habeas petition and addressed by the state habeas court in that case.

The state habeas court denied Mr. Wilson's request for habeas relief in findings of fact and conclusions of law filed January 9, 2015. The court stated the DOC classified Mr. Wilson as an unconvicted sex offender ("USO") based on information received from the Yankton County jail about alleged sexual contact Mr. Wilson had with other inmates while incarcerated there. Mr. Wilson challenged the USO classification through the prison administrative remedy process.

The state habeas court recounted that at the prison evidentiary hearing on the grievance, documents were introduced indicating Mr. Wilson had tried to "molest" three men at the jail. Two of the men refused to press charges. As to the third, Mr. Wilson was charged with sexual contact without consent in violation of SDCL § 22-22-7.4. These charges were dropped as part of a plea bargain involving Mr. Wilson's plea to aggravated assault. Also introduced at the grievance hearing was an incident report dated August 11, 2010, indicating two inmates reported Mr. Wilson attempted to make sexual contact with them. The result of the hearing was that Mr. Wilson's USO classification was upheld. Mr. Wilson did not timely pursue an administrative appeal of this decision.

As to the plea agreement, the state habeas court noted the prosecutor promised as part of the plea agreement to *recommend* a sentence of 5 years' imprisonment for Mr. Wilson.  Further, the court noted the prosecutor in fact recommended such a sentence at the sentencing hearing.  The court held the plea agreement did not bind the sentencing court to a "cap" of 5 years.  Thus, the habeas court held the prosecutor did not violate the terms of the plea agreement. The court also concluded that Mr. Wilson's counsel was not ineffective for failing to object to the prosecutor's "breach" of the plea agreement since no breach occurred.

The state habeas court held that Mr. Wilson's Fifth Amendment rights were not violated by requiring him to participate in STOP classes, even if doing so required him to admit to criminal sexual conduct in the Yankton County jail.  The court reasoned that the criminal charges from the Yankton County jail were dismissed with prejudice as part of the plea bargain with Mr. Wilson.  If, upon admitting such conduct as part of the STOP classes, the state re-charged Mr. Wilson with the sexual contact charges, the state would be in material breach of the plea agreement.  Thus, the court concluded there was no jeopardy to Mr. Wilson in being compelled to admit conduct for which he could never be charged.  The court further found that the administrative grievance process provided to Mr. Wilson to challenge his USO status afforded him due process.

On February 9, 2015, Mr. Wilson filed a motion for a certificate of probable cause.  The state habeas court denied that motion in an order filed on February 11, 2015.  Mr. Wilson did not seek a certificate of probable cause from the South Dakota Supreme Court.

## C.     Parole Proceedings and Revocation

On March 31, 2015, Mr. Wilson was granted parole.  The South Dakota

Board of Pardons and Paroles ("Board") entered an order on March 12, 2015,

requiring that Mr. Wilson continue with sex offender treatment while on parole.

Mr. Wilson states he was required to take a polygraph examination as part of that

sex offender treatment on September 21, 2015.  In the Board's estimation,

Mr. Wilson "failed" that exam.

A parole revocation hearing was held on October 28, 2015, before the Board.

At that hearing, Mr. Wilson waived his right to counsel, waived his right to a

preliminary hearing, and admitted he violated the condition of parole requiring

him to participate, cooperate and complete any programs as directed.  See Docket

No. 9-1 at p. 2.  The Board then revoked Mr. Wilson's parole at the conclusion of

the hearing.  Id. at pp. 2-3.  In an order served on Mr. Wilson on November 6,

2015, the Board imposed the 5 years of prison time that had previously been

suspended, but it suspended one year and ten months of that 5-year sentence.  Id.

at p. 1, 3.  Mr. Wilson had 30 days after being served with the Board's decision to

pursue an administrative appeal of that decision pursuant to SDCL § 1-26-31.  He

did not pursue such an appeal.

However, Mr. Wilson *did* pursue an appeal of the Board's decision by filing a

grievance within the prison administrative grievance process on November 1,

2016, 11 months after the date the Board's order had been served on him.  See

Docket No. 1-5 at p. 2.  In his grievance, he again asserted the claim that his

required polygraph examination violated his Fifth Amendment right against self-

incrimination.  Id.  On the same day, November 1, 2016, prison officials denied the

5

grievance.  Id. at p. 4.  They notified Mr. Wilson that the Warden could not grant

him the relief he was requesting.  Id.  They told Mr. Wilson only the Board had the

power to grant him the relief he was seeking.  Id.  Mr. Wilson continued to press

his grievance through the prison administrative grievance process all the way to

the level of the Secretary of the South Dakota Department of Corrections, with the

same result—his grievance was denied.  Id. at p. 11.  The final denial of

Mr. Wilson's grievance was dated December 14, 2016.  Id.

**D.      Second State Habeas Petition**

On January 3, 2017, Mr. Wilson filed a second state habeas petition in state

circuit court.  See Docket No. 1-4 at pp. 39-44.  In that petition, Mr. Wilson

recounted his recent parole, and then the revocation of that parole.  Id.  He alleged

the required sex polygraph examinations as a condition of his parole violated his

Fifth Amendment right against self-incrimination.  He also alleged the polygraph

violated his due process rights because polygraph examinations are not reliable,

accurate, or valid and therefore are an improper basis upon which to deprive him

of his liberty interest.  Id.

The state habeas court refused to entertain Mr. Wilson's second habeas

petition because it deemed the petition a "second or successive" petition that did

not meet the requirements of SDCL § 21-27-5.1.  An order denying leave to file the

second state habeas petition was entered on February 28, 2017.

**E.      Mr. Wilson's Instant Federal Habeas Petition Herein**

Mr. Wilson filed the instant federal habeas petition pursuant to 28 U.S.C.

§ 2254 on April 24, 2017.  See Docket No. 1.  Mr. Wilson alleges his parole

revocation based on mandatory sex polygraph examinations violated his Fifth

Amendment right against self-incrimination. He cites <u>McKune v. Lile</u>, 536 U.S. 24 (2002); <u>Minnesota v. Murphy</u>, 465 U.S. 420 (1984); and <u>United States v. Von Behren</u>, 822 F.3d 1139 (10th Cir. 2016).

Respondents now move to dismiss Mr. Wilson's petition, alleging it is untimely. <u>See</u> Docket No. 8. Mr. Wilson resists this motion. <u>See</u> Docket Nos. 13 & 14.

## DISCUSSION

**A.    Timeliness of Mr. Wilson's Petition**

**1.    The Statute of Limitations Period is One Year**

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Such petitions are governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). AEDPA contains a one-year statute of limitations applicable to § 2254 petitions:

> **(d)**    **(1)** A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> **(B)** the date on which the impediment to filing an application created by State action in violation the Constitution or laws of the United States is removed, if the applicant  was prevented from filing by such State action;
>>
>> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court

and made retroactively applicable to cases on collateral review;

**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See 28 U.S.C. § 2244(d)(1) and (2). Subsection (d)(1), above, is sometimes called the "trigger" provision of AEDPA, because it determines when the initial running of the statute of limitations is "triggered." Subsection (d)(2) above, is referred to as the "tolling" or "statutory tolling" provision of AEDPA, because it determines when the running of the statute of limitations is tolled or suspended.

A judgment or state conviction is final, for purposes of commencing the statute of limitation period, at "(1) either the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (2) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ." Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998). The time allotted for filing a petition for writ of certiorari with the Supreme Court is ninety days. Jihad v. Hvass, 267 F.3d 803, 804 (8th Cir. 2001).

Mr. Wilson's parole revocation became final 30 days after November 6, 2015, which was December 6, 2015. See SDCL § 1-26-31. The federal statute

of limitations, therefore, began to run on December 7, 2015, absent any statutory or equitable tolling. Therefore, unless tolling applies, Mr. Wilson would have been required to file his petition in this court by December 7, 2016. He in fact filed his petition with this court on April 24, 2017, over five months after the December 7, 2016, date. The court must therefore examine whether statutory or equitable tolling took place between December 7, 2016, and April 24, 2017.

### 2. Statutory Tolling

The statute of limitations for § 2254 petitions is subject to tolling. See 28 U.S.C. § 2244(d)(2). This one-year limitation period is tolled, or does not include, the time during which a "properly filed" application for state post-conviction relief or other collateral review "is pending" in state court. Faulks v. Weber, 459 F.3d 871, 873 (8th Cir. 2006); 28 U.S.C. § 2244(d)(2). The phrase "post-conviction or other collateral review" in § 2254's tolling provision encompasses the "diverse terminology that different States employ to represent the different forms of collateral review that are available after a conviction." Duncan v. Walker, 533 U.S. 167, 177 (2001). Thus, § 2254's tolling provision "applies to all types of state collateral review available after a conviction." Id.

A properly filed application for state collateral or post-conviction review "is one that meets all the state's procedural requirements. Courts interpret the words 'properly filed' narrowly." Beery v. Ault, 312 F.3d 948, 950-51 (8th Cir. 2002) (citing Lookingbill v. Cockrell, 293 F.3d 256, 260-61 (5th Cir. 2002)); See also Artuz v. Bennett, 531 U.S. 4, 8 (2000) ("[A]n application is 'properly filed'

when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.").  State rules usually prescribe "the form of the document, the time limits upon delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz, 531 U.S. at 8.

State collateral or post-conviction proceedings "are 'pending' for the period between the trial court's denial of the [post-conviction relief] and the timely filing of an appeal from it." Maghee v. Ault, 410 F.3d 473, 475 (8th Cir. 2005) (citing Peterson v. Gammon, 200 F.3d 1202, 1203 (8th Cir. 2000)); See also Johnson v. Kemna, 451 F.3d 938, 939 (8th Cir. 2006) (an application for state post-conviction review is pending until a mandate is issued).  "State proceedings are not pending during the time between the end of direct review and the date an application for state [post-conviction relief] is filed." Maghee, 410 F.3d at 475 (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)).

In short, the one-year statute of limitations begins to run after the state conviction is final, is tolled while a properly filed application for post-conviction relief is pending, and then begins running again when proceedings on that properly filed application become final.  Curtiss v. Mount Pleasant Corr. Facility, 338 F.3d 851, 853 (8th Cir. 2003).

### a.     Prison Administrative Grievance Did Not Toll

Two filings were made by Mr. Wilson during the relevant limitations period after the statute of limitations began to run December 7, 2015.  The first filing was his filing of an informal resolution request ("IRR"), the first step in the state prison grievance procedure.  See Docket No. 1-5 at p. 2.  This filing was

made on November 1, 2016, eleven months after the limitations period began running.  Id.   However, as discussed in more detail below in Section B of this opinion, the only proper way to contest the Board's revocation of one's parole is to pursue an administrative appeal of the Board's decision pursuant to SDCL § 1-26-37.  The prison system, the South Dakota Department of Corrections, and the warden of Mr. Wilson's prison are without any power or jurisdiction to address a decision of the Board.  Therefore, the court concludes Mr. Wilson's IRR and the subsequent steps he took within the prison administrative grievance process was not a "properly filed application for post-conviction relief" as contemplated by AEDPA.  See Artuz, 531 U.S. at 8 (if a pleading fails to comply with state rules regarding the tribunal in which such pleading must be filed, it is not a "properly filed" post-conviction relief application within the meaning of AEDPA).  Since the IRR was not a "properly filed" application, it did not toll the AEDPA statute of limitations.

### b.       Second State Habeas Petition Did Toll, But Was Too Late

The other pleading filed by Mr. Wilson was a second state habeas petition.  See Docket No. 1-4 at pp. 39-44.  This was dated January 3, 2017.  Id. The petition does not appear in the state circuit court's file, so it is unknown what date the petition was received by the circuit court.  This court gives Mr. Wilson the benefit of the doubt and assumes the second petition was filed on the date it was dated, that is, January 3, 2017.[1]

_____

[1] The Eighth Circuit has held that, "for purposes of applying 28 U.S.C. § 2244(d), a pro se prisoner's petition for a writ of habeas corpus is filed on the

The state circuit court summarily dismissed Mr. Wilson's second habeas petition in the mistaken assumption that it was a second or successive petition that did not comply with state law regarding such petitions. In fact, it was not a second or successive petition because Mr. Wilson was not attacking his original conviction. Instead, he was attacking his parole revocation.

In Snow v. Ault, 238 F.3d 1033, (8th Cir. 2001), the Eighth Circuit reiterated that "'properly filed' merely means that the application for post-conviction relief had been delivered and accepted for filing 'in compliance with the applicable laws and rules governing filings.'" Snow, 238 F.3d at 1035 (quoting Artuz, 531 U.S. at 8). The Snow court further held that a petition for post-conviction relief, in this case a successive state petition, that was properly delivered and accepted for filing satisfied the tolling provision of AEDPA even though it was subject to summary dismissal. Id. Thus, if Mr. Wilson's second habeas petition was otherwise a "properly filed" petition, it would have had the potential to toll his AEDPA statute of limitations. However, Mr. Wilson's second state habeas petition did not toll the AEDPA limitations period for two reasons.

First, the second habeas petition was filed in state court almost a full month *after* the AEDPA limitations period had already run. The AEDPA

---

date it is delivered to prison authorities for mailing to the clerk of the court." Nichols v. Bowersox, 172 F.3d 1068, 1077 (8th Cir. 1999) abrogated on other grounds by Riddle v. Kemna, 523 F.3d 850, 855 (8th Cir. 2008). To invoke the prison mailbox rule, petitioner must file an affidavit or notarized statement that shows the date on which he delivered his pleading to prison authorities. Porchia v. Norris, 251 F.3d 1196, 1198 (8th Cir. 2001).

limitations period ended on December 7, 2016. Mr. Wilson's second state habeas petition was filed January 3, 2017. Thus, the petition could not toll the running of a limitations period that had already run.

Second, as discussed more fully in Section B of this opinion, below, the second habeas petition was not a "properly filed" application for post-conviction relief. This is because under South Dakota law, the only avenue for contesting the Board's revocation of parole is an administrative appeal of the Board's decision. State circuit courts, with whom Mr. Wilson filed his second habeas petition, have no jurisdiction to entertain appeals of the Board's parole revocation decisions until after Mr. Wilson exhausts his administrative remedies. Thus, the second state habeas petition did not toll the AEDPA limitations period either.

### c.    **Equitable Tolling**

The one-year AEDPA statute of limitations is not a jurisdictional bar. Baker v. Norris, 321 F.3d 769, 771 (8th Cir. 2003). The time limit is subject to equitable tolling when "extraordinary circumstances" beyond a prisoner's control make it impossible to file a petition on time. Id. A petitioner seeking equitable tolling must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

Everyone is presumed to know the law and is subject to the law, even *pro se* prisoners. Baker, 321 F.3d at 772 (citing Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999)). See Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir.

2000) (stating that equitable tolling was not justified in the case of an unrepresented prisoner who alleged a lack of legal knowledge or legal resources).

In Holland v. Florida, 560 U.S. 631 (2010), the Supreme Court addressed equitable tolling under AEDPA in a death penalty case. The Court held, for the first time, in accord with all the lower circuit courts of appeal, that the statute of limitations under AEDPA could be equitably tolled. Id. at 645. In so holding, the Court noted that the statute of limitations was not jurisdictional. Id. The Court stated that nonjurisdictional federal statutes of limitations are normally subject to a "rebuttable presumption" in favor of equitable tolling. Id. at 645-46. The Court held that this rebuttable presumption was especially appropriate in the context of habeas petitions as the granting of habeas relief is governed by equitable principles. Id.

Having established that equitable tolling was available, the Holland Court went on to explain when that doctrine could be invoked. Id. at 649-52. A habeas petitioner my invoke the doctrine of equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649 (quoting Pace, 544 U.S. at 418). The Court emphasized the need for flexible rules governing the application of equitable tolling, but also noted that " 'a garden variety claim of excusable neglect' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." Id. at 651-52 (citations omitted).

In the <u>Holland</u> case, the lawyer was not only unaware of the AEDPA deadline and missed it, but the petitioner also repeatedly asked the lawyer to timely file the § 2254 petition and wrote letters to the lawyer drawing his attention to the applicable legal rules. <u>Id.</u> at 636-40. In addition, the lawyer failed to timely notify the petitioner of actions in his state case, including when the appellate court of last resort issued its decision, concluding review of petitioner's application for postconviction relief. <u>Id.</u> The petitioner assiduously attempted to keep himself informed by writing to the state court and the state clerk of courts, asking them for information about his case. <u>Id.</u> After learning in the prison law library—five weeks later—that the state supreme court had decided his appeal, the petitioner filed his § 2254 petition the very same day. <u>Id.</u> Under these facts, the <u>Holland</u> Court held that equitable tolling was not foreclosed as a matter of law and remanded for the Eleventh Circuit to apply the principles to the case and determine if the petitioner's claim was timely. <u>Id.</u> at 653-54. The court held that the diligence required of a habeas petitioner is "reasonable diligence," not "maximum feasible diligence." <u>Id.</u> at 653.

Here, Mr. Wilson asserts he only discovered the legal basis for his Fifth Amendment claim in October, 2016, when he found out about the Tenth Circuit's decision in <u>United States v. Von Behren</u>, 822 F.3d 1139 (10th Cir. 2016). In <u>Von Behren</u>, the court held that a person could not be compelled to engage in a sexual polygraph examination while on supervision for a criminal conviction if the answers to the polygraph examination would tend to incriminate him and the state compelled him to either answer the questions

(and incriminate himself) or invoke his Fifth Amendment right against self-incrimination (and have his supervision revoked).  Id. at 1150-51.

However, the Von Behren decision was based on earlier, well-established law set forth by the Supreme Court in Minnesota v. Murphy, 465 U.S. 420 (1984).  In Murphy, as the Von Behren court noted, the Court held "[t]he Fifth Amendment's privilege against self-incrimination applies not only to persons who refuse to testify against themselves at a criminal trial in which they are the defendant, 'but also "privileges [them] not to answer official questions put to [them] in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [them] in future criminal proceedings." ' " Von Behren, 822 F.3d at 1144 (quoting Murphy, 465 U.S. at 426 (quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973))).  "A defendant does not lose this protection by reason of his conviction of a crime."  Murphy, 465 U.S. at 426.

The test for whether a Fifth Amendment privilege applies is whether a communication is (1) testimonial, (2) incriminating, and (3) compelled.  Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177, 189 (2004).  A 1966 Supreme Court case had previously held that answering questions in a polygraph examination was a communicative act that was testimonial in nature.  Schmerber v. California, 384 U.S. 757, 761 (1966).

The law Mr. Wilson relies upon in asserting his current federal habeas action was neither new nor novel.  It had been well-established law for a long time.  Therefore, Mr. Wilson's "discovery" of the 2016 Von Behren case does not serve to toll the AEDPA statute of limitations.  The law set forth in Von Behren

16

did not break new ground.  It was not necessary for Mr. Wilson to have read this Tenth Circuit case in order to know the law pertaining to compelled polygraph examinations.  That was established precedent dating back to at least 1984 when the Supreme Court decided Murphy.  Accordingly, the court finds Mr. Wilson did not act with due diligence in pursuing his habeas claims. Williams v. Kelley, 830 F.3d 770, 773 (8th Cir. 2016) (setting forth standard for "due diligence" under AEDPA).   His allegation that he did not "discover" Von Behren does not serve to equitably toll his AEDPA statute of limitations.

Although the old stricture "everyone is presumed to know the law" can seem harsh when applied to a *pro se* prisoner trying to navigate his way through the briar field that is federal habeas law, the application of the rule is ameliorated in great part in Mr. Wilson's case.  That is because he was already familiar with the rule announced in Murphy and Von Behren because his habeas lawyer in his first habeas petition raised this issue.  The state habeas court then discussed the issue extensively in its decision issued January 7, 2015.  Therefore, when Mr. Wilson's parole was revoked 10 months later on November 6, 2015, he knew or should have known he had a Fifth Amendment compelled incrimination issue to raise.  In fact, he did not act diligently in raising that issue.  He waited almost a year before filing his IRR in the prison grievance system and he waited 14 months before filing his second state habeas petition.  The court holds this was not due diligence as a matter of law. The court recommends dismissing Mr. Wilson's federal habeas petition with prejudice as untimely.

## B.    Mr. Wilson Has Procedurally Defaulted His Claim

A second reason Mr. Wilson's federal habeas petition must be dismissed with prejudice is that he has procedurally defaulted his claim.  Under AEDPA, federal courts may exercise only a "limited and deferential review of underlying state court decisions."  Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005). Under ADEPA, federal habeas review of state court convictions is limited to claims the petitioner previously presented to the state courts for consideration:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
> > (A) the applicant has exhausted the remedies available in the courts of the state; or
> > (B)    (i) there is an absence of available State corrective process; or
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> * * *
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
>
> See 28 U.S.C. § 2254(b) and (c).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  If a ground for relief in the petitioner's claim makes factual or legal arguments that were not present in the petitioner's state claim, then the ground is not exhausted. Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991).  The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the

disruption of state judicial proceedings.  Rose v. Lundy, 455 U.S. 509, 518

(1982).  The Supreme Court has stated:

> Because "it would be unseemly in our dual system of government
> for a federal district court to upset a state court conviction without
> an opportunity to the state courts to correct a constitutional
> violation," federal courts apply the doctrine of comity, which
> "teaches that one court should defer action on causes properly
> within its jurisdiction until the courts of another sovereignty with
> concurrent powers, and already cognizant of the litigation, have
> had an opportunity to pass upon the matter."

Rose, 455 U.S. at 518 (citation omitted).

The exhaustion rule requires state prisoners to seek complete relief on all

claims in state court prior to filing a writ of habeas corpus in federal court.

Federal courts should, therefore, dismiss a petition for a writ of habeas corpus

that contains claims that the petitioner did not exhaust at the state level.  See

28 U.S.C. § 2254; Rose, 455 U.S. at 522.  The exhaustion requirement is

waived "only in rare cases where exceptional circumstances of peculiar urgency

are shown to exist."  Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995).

A federal court must determine whether the petitioner fairly presented an

issue to the state courts in a federal constitutional context.  Satter v. Leapley,

977 F.2d 1259, 1262 (8th Cir. 1992).  "To satisfy exhaustion requirements, a

habeas petitioner who has, on direct appeal, raised a claim that is decided on

its merits need not raise it again in a state post-conviction proceeding."  Id.

"[S]tate prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established

appellate review process."  O'Sullivan, 526 U.S. at 845.  "A claim is considered

exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993).

Fairly presenting a federal claim requires more than simply going through the state courts:

> The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

Picard v. Connor, 404 U.S. 270, 276 (1971).

It is also not enough for the petitioner to assert facts necessary to support a federal claim or to assert a similar state-law claim.  Ashker, 5 F.3d at 1179.  The petitioner must present both the factual and legal premises of the federal claims to the state court.  Smittie v. Lockhart, 843 F.2d 295 at 297 (8th Cir. 1988) (citation omitted).  "The petitioner must 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.' " Ashker, 5 F.3d at 1179.  This does not, however, require petitioner to cite "book and verse on the federal constitution."  Picard, 404 U.S. at 278 (citing Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)).  The petitioner must simply make apparent the constitutional substance of the claim.  Satter, 977 F.2d at 1262.

In this federal petition, Mr. Wilson asserts his state parole revocation violated his constitutional rights. See Docket 1. Although Mr. Wilson did file a habeas petition containing this claim in state court, Mr. Wilson's claim is not exhausted at the state level. That is because it is the final decision of the Board of Pardons and Paroles which Mr. Wilson seeks to challenge in his state habeas petition and this pending § 2254 petition.

The appropriate remedy for Mr. Wilson to challenge the Board's decision was *not* a state habeas corpus petition under SDCL Ch. 21-27. Instead, Mr. Wilson should have pursued an appeal of the Board's decision through SDCL Chapter 1-26. Because he failed to properly pursue his administrative appeal, it appears Mr. Wilson has not exhausted his state remedies.

South Dakota law provides "[a]n appeal from the Board is governed by SDCL 1-26-37." Santema v. South Dakota Board of Pardons and Paroles, 735 N.W.2d 904, 905 (S.D. 2007) (quoting Austad v. South Dakota Board of Pardons and Paroles, 719 N.W.2d 760, 764 (S.D. 2006). In Santema, the South Dakota inmate challenged the Board's calculation of his parole eligibility date. Id. In Austad, as in this case, the inmate challenged the Board's revocation of his parole. Austad, 719 N.W.2d at 762. In both cases, the South Dakota Supreme Court unequivocally instructed that appeals from the decisions of the Board of Pardons and Paroles are governed by SDCL 1-26-37. Santema, 735 N.W.2d at 905; Austad, 719 N.W. 2d at 764. See also, Acevedo v. South Dakota Board of Pardons and Paroles, 768 N.W.2d 155, 158 (S.D. 2009) (same).

In <u>Bohlman v. Lindquist</u>, 562 N.W2d 578 (S.D. 1997), a patient brought a habeas petition in circuit court, seeking a transfer to a less restrictive facility. <u>Id.</u> at 578. The circuit court dismissed the petition however, because Mr. Bohlman had not obtained the necessary certification for *release*. <u>Id.</u> at 580. The South Dakota Supreme Court explained the circuit court reached the right result in dismissing Mr. Bohlman's habeas petition, though it did so for the wrong reason. <u>Id.</u>

The court began by explaining the Human Services Center was an administrative agency within the Department of Human Services, an executive department under SDCL 1-36A-1.3. <u>Id.</u> at 580. "Once an offender is within the jurisdiction of the executive branch of government, the judicial branch –the circuit court—loses jurisdiction and control. The judiciary's relinquishment of jurisdiction to the executive branch upon commitment of a defendant to an executive agency avoids the chaos and confusion that would result from simultaneous jurisdiction." <u>Id.</u> at 581 (citations omitted). The court further explained Mr. Bohlman must first follow the appropriate administrative procedures to seek a less restrictive setting.

> [I]n the event [he] is denied relief, he is entitled to judicial review of the denial. SDCL 1-26-30.
>
> Bohlman, however, has not made an administrative request to be transferred. Rather than requesting the HSC evaluate his placement, he filed an application for a writ of habeas corpus with the court. This application is premature due to Bohlman's failure to pursue appropriate remedies to obtain the requested transfer and precludes judicial jurisdiction to review the request. We are without jurisdiction to entertain Bohlman's appeal at this time. The dismissal of Bohlman's application for a writ of habeas corpus is affirmed.

Id. Though Mr. Bohlman was not a prisoner, this language is significant because persons on parole or suspended sentence are also under the supervision of the executive branch of the government.  Krukow v. South Dakota Board of Pardons and Paroles, 716 N.W.2d 121, 125 (S.D. 2006) (citaitons omitted).  As such, pursuant to Bohlman, a state habeas corpus petition is "premature" until the prisoner has complied with Chapter 1-26.

Additionally, the United States Supreme Court has explained that to comply with 28 U.S.C. § 2254 a petitioner must only give the state "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's *established appellate review process*."  O'Sullivan, 526 U.S. at 845 (emphasis added).

In Castille v. Peoples, 489 U.S. 346 (1989), the Court examined the language in § 2254 which states exhaustion is deemed incomplete if the petitioner has the right to raise the question presented by *any* available procedure.  Id. at 350.  The Court explained

> Read narrowly, this language appears to preclude a finding of exhaustion if there exists any possibility of further state court review.  We have, however, expressly rejected such a construction. Brown v. Allen, 344 U.S. 443, 448-49 n.3 (1953), holding instead that once the state courts have ruled upon a claim, it is not necessary for a petitioner to 'ask the state court for collateral relief, based upon the same evidence and issues already decided by direct review.' Id. at 447.  This interpretation reconciles § 2254(c) with § 2254(b), which provides that federal habeas review will lie where state corrective processes are 'ineffective to protect the right of the prisoner.'  It would be inconsistent with the latter provision, as well as the underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined, or permanently to bar from federal habeas

prisoners in States whose postconviction procedures are
technically inexhaustible.

Castille, 489 U.S. at 350.  According to Castille then, the exhaustion doctrine

would not require Mr. Wilson to file a state habeas pursuant to SDCL Chapter

21-27 if he had complied with the procedure for directly appealing decisions of

the Board of Pardons and Paroles outlined pursuant to SDCL Chapter 1-26.

This is because the constitutional issues Mr. Wilson wishes to present to this

court would have already been presented to the state courts through this

channel.  See also Eaton v. Wyrick, 528 F.2d 477, 480 (8th Cir. 1975) ("the

exhaustion requirement was not meant . . . to provide the state with more than

one full and fair opportunity to decide a question which is properly presented

to it for review.").

Mr. Wilson's claims are not exhausted because he did not invoke one

complete round of the state's established appellate review process.  O'Sullivan,

526 U.S. at 845.  Pursuant to Santema the "established appellate review

process" for decisions of the South Dakota Board of Pardons and Paroles is

dictated by SDCL § 1-26.  SDCL § 1-26-31 provides:

> **1-26-31**.  Notice of appeal--Time for service and filing. An appeal
> shall be taken by serving a copy of a notice of appeal upon the
> adverse party, upon the agency, and upon the hearing examiner, if
> any, who rendered the decision, and by filing the original with
> proof of such service in the office of the clerk of courts of the
> county in which the venue of the appeal is set, within thirty days
> after the agency served notice of the final decision or, if a rehearing
> is authorized by law and is requested, within thirty days after
> notice has been served of the decision thereon. Failure to serve
> notice of the appeal upon the hearing examiner does not constitute
> a jurisdictional bar to the appeal.

See SDCL § 1-26-31.

The South Dakota Supreme Court has held that this requirement is jurisdictional, requiring dismissal of the appeal if it is not properly and timely filed and served.  Hansen v. South Dakota Board of Pardons and Paroles, 601 N.W.2d 617, 619 (S.D. 1999).  Thus, the circuit court (and consequently the South Dakota Supreme Court) was deprived of the opportunity to review the merits of Mr. Wilson's constitutional claims.  As such, he failed to exhaust his constitutional claims in state court.

Normally, the appropriate action for a federal court faced with unexhausted claims would be to dismiss the petition without prejudice to allow the petitioner to exhaust his state remedies.  Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998).  However, if there are no remaining nonfutile avenues for relief, analysis of the procedural default doctrine is the next step. The 30-day appeal time for Mr. Wilson to administratively appeal the Board's decision has long since passed.  There are no non-futile state remedies available to him.

 Procedural default is sometimes called the "adequate and independent state grounds" doctrine.  A federal habeas petitioner who has defaulted his federal claims in state court by failing to meet the state's procedural rules for presenting those claims, has committed "procedural default."  Coleman v. Thompson, 501 U.S. 722, 731-32, 735 n.1 (1991), overruled in part on other grounds by Martinez v. Ryan, 566 U.S. ___, 132 S. Ct. 1309 (2012),[2]

---

[2] The Martinez decision modified that part of the Coleman decision involving whether ineffective assistance of habeas counsel can constitute "cause" excusing a procedural default.  See Martinez v. Ryan, 566 U.S. ___, 132 S. Ct.

superseded in part on other grounds by statute as recognized in <u>Duncan v. Atchison</u>, 2014 WL 4062737 (N.D. Ill. Aug. 13, 2014). <u>Coleman</u>, 501 U.S. at 731-32, 735 n.1. If federal courts allowed such claims to be heard in federal court, they would be allowing habeas petitioners to perform an "end run" around state procedural rules. <u>Id.</u> However, where no further non-futile remedy exists in state court, it is not feasible to require the petitioner to return to state court as would be the case in a dismissal for failure to exhaust state remedies.

In the <u>Coleman</u> case, the habeas petitioner, Coleman, had defaulted all of his federal claims by filing his notice of appeal from the state trial court three days late. <u>Coleman</u>, 501 U.S. at 727-28, 749. The state appellate court then refused to hear Coleman's appeal on the basis of his late-filing of his notice of appeal. <u>Id.</u> at 740. The Court held "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[3] <u>Id.</u> at

---

1309, 1315 (2012) (holding that, where state law required that ineffective assistance of counsel claims may not be raised until habeas proceedings, ineffectiveness of habeas counsel may supply "cause" sufficient to excuse a procedural default). <u>Martinez</u> has no application to this case as Mr. Wilson's claims are not based on ineffective assistance of counsel.

[3] To fit within the fundamental miscarriage of justice exception, the petitioner must make a showing of actual innocence. <u>Schlup v. Delo</u>, 513 U.S. 298, 321, (1995). A successful claim of actual innocence requires the petitioner to

750.  See also Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) ("A district court need not consider the merits of a procedurally defaulted claim.") (citations omitted).

"Adequate and independent state grounds" exist for the state court's decision if the decision of the state court rests on state law ground that is independent of the federal question and adequate to support the judgment. Coleman, 501 U.S. at 729.  "This rule applies whether the state law ground is substantive or procedural."  Id. at 729.  "[A] state procedural ground is not adequate unless the procedural rule is strictly or regularly followed."  Johnson v. Mississippi, 486 U.S. 578, 587 (1988).  Mr. Wilson makes no allegation that the rule requiring decisions of the Board to be administratively appealed pursuant to SDCL ch. 1-26 is arbitrarily or irregularly enforced.

"The federal court looks to the last, reasoned state court opinion dealing with the claim to determine whether a specific contention is procedurally defaulted.  If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar that might otherwise have been available."  Clemons v. Leubbers, 381 F.3d 744, 750 (8th Cir. 2004) (citations omitted).

Because the last reasoned state court opinion dealing with Mr. Wilson's habeas claims did not address their merits but rejected them on procedural grounds (i.e. the petition was deemed a second or successive petition and did

---

support his allegations with new, reliable evidence.  Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997).  Mr. Wilson does not invoke the fundamental-miscarriage-of-justice exception, so the court does not analyze that issue.

not comply with the rules for filing such petitions), this court is precluded from reviewing them. <u>Coleman</u>, 501 U.S. at 750; <u>Weigers v.Weber</u>, 37 Fed. Appx. 218, 219-20 (8th Cir. 2002) (unpublished) (prisoner's failure to timely appeal denial of state habeas resulted in failure to give South Dakota one full opportunity to resolve any constitutional issue by invoking one complete round of South Dakota's established appellate process–and thus his claims were procedurally defaulted).

A state procedural default bars federal habeas review unless the petitioner can demonstrate "cause" for the default *and* actual prejudice as a result of the violation of federal law. <u>Maynard v. Lockhart</u>, 981 F.2d 981, 984 (8th Cir. 1992) (citations omitted, emphasis added). If no "cause" is found, the court need not consider whether actual prejudice occurred. <u>Id</u>. at 985; <u>Wyldes v. Hundley</u>, 69 F.3d 247, 253 (8th Cir. 1995) (citations omitted). "The requirement of cause . . . is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief . . ." <u>Cornman v. Armontrout</u>, 959 F.2d 727, 729 (8th Cir. 1992). The habeas petitioner must show that "some objective factor *external to [petitioner]* impeded [his] efforts." <u>Id.</u> (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)) (emphasis added).

A petitioner may show cause by demonstrating that the factual or legal basis for a claim was not reasonably available to the petitioner at the time or that there was interference by officials which prevented the petitioner from exhausting his state remedies. <u>Murray</u>, 477 U.S. at 488. A petitioner's lay

status, *pro se* status, and lack of education are not sufficient cause to excuse a procedural lapse in failing to pursue state court remedies.  See Stewart v. Nix, 31 F.3d 741, 743 (8th Cir. 1994); Smittie, 843 F.2d at 298.  Illiteracy or low intelligence are also not enough to demonstrate cause.  See Criswell v. United States, 108 F.3d 1381, *1 (8th Cir. 1997) (unpub'd.); Cornman, 959 F.2d at 729.  Finally, neither is ignorance of the law.  Maxie v. Webster, 978 F.2d 1264, *1 (8th Cir. 1992) (unpub'd.).

For the same reasons this court declined to recommend equitable tolling apply in this case, the court also concludes Mr. Wilson has failed to demonstrate cause.  That is, the law regarding Fifth Amendment self-incrimination was well-known and established at the time the Board revoked Mr. Wilson's parole.  Mr. Wilson should have been aware of that law.  Moreover, the court concludes Mr. Wilson *did* know of that law because his state habeas lawyer raised this issue in Mr. Wilson's first state habeas petition and the state habeas court discussed the law at length in its opinion denying habeas relief, all of which occurred prior to the Board's revocation of Mr. Wilson's parole.  Since Mr. Wilson cannot demonstrate cause, the court need not analyze whether he has demonstrated prejudice.  The court recommends as an alternate basis for dismissal of Mr. Wilson's petition that said petition be dismissed as procedurally defaulted.

## CONCLUSION

Based on the foregoing law, facts, and analysis, this magistrate judge respectfully recommends granting respondents' motion to dismiss [Docket No.

8] and dismissing petitioner Scott Wilson's habeas petition [Docket No. 1] with prejudice.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED September 13, 2017.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge